1  **MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 090058)
2  ssaltzman@marlinsaltzman.com
29229 Canwood Street, Suite 208
3  Agoura Hills, California 91301
Telephone:   (818) 991-8080
4  Facsimile:    (818) 991-8081

5  Attorneys for Plaintiff Lauren Mathein, individually and
on behalf of all others similarly situated

6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10                    **FRESNO DIVISION**

| | |
|---|---|
| 11  LAUREN MATHEIN, individually and on behalf of all others similarly situated, | Case No. |
| 12 | **CLASS ACTION** |
| 13              Plaintiffs, | **COMPLAINT** |
| 14  v. | 1) Failure to Pay Reporting Time Pay (8 CCR § 11070(5); Labor Code § 558) (On Call Shifts); |
| 15 | 2) Failure to Pay Minimum Wage (Labor Code §§ 1182.11, 1182.12, 1194, 1194.2, 1197, Wage Order); |
| 16  PIER 1 IMPORTS, INC.; PIER 1 IMPORTS (U.S.), INC.; and DOES 1 through 10, inclusive, | 3) Failure to Maintain Required Business Records (Labor Code §§ 1174, 1174.5; Wage Order); |
| 17 | 4) Failure to Provide Accurate Itemized Wage Statements (Labor Code §§ 226, 226.3; Wage Order); |
| 18              Defendants. | 5) Failure to Pay All Wages Earned at Termination (Labor Code §§200-203); |
| 19 | 6) Unlawful Business Practices (Bus. & Prof Code §§ 17200, *et seq.*); |
| 20 | 7) Unfair Business Practices (Bus. & Prof Code §§ 17200, *et seq.*); |
| 21 | 8) Civil Penalties Under The Private Attorneys General Act (Labor Code §§ 2698, *et seq.*) |

26  / / /

27  / / /

28  / / /

---

1

COMPLAINT

# **PRELIMINARY STATEMENT**

COMES NOW, Plaintiff Lauren Mathein ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges against Pier 1 Imports, Inc. and Pier 1 Imports (U.S.), Inc. (collectively "Defendant") the following:

1.     Plaintiff brings this proposed class action on behalf of herself and all similarly situated individuals, pursuant to Federal Rule of Civil Procedure 23, against Defendant for damages suffered as a result of Defendant's unlawful and unfair employment practices.

2.     Plaintiff and putative class members were or are employed by Defendant, and were denied minimum wage and reporting time compensation as required by governing wage orders and California law. Moreover, for those employees who no longer work for Defendant, Defendant failed to timely pay those employees all compensation due and owing upon termination or resignation. All of these claims result in additional derivative violations of the California Labor Code.  Furthermore, Defendant's scheduling policies, practices and procedures are unlawful and unfair under California's Unfair Competition Law (the "UCL").

3.     As a result of Defendant's unlawful and unfair employment practices, Plaintiff seeks monetary and injunctive relief for themselves and the putative class.

# **PARTIES**

4.     At all relevant times herein, Plaintiff was and is a resident and citizen of the State of California, County of Fresno. From September of 2014 until August of 2015, Plaintiff worked as a retail sales clerk at a Pier 1 retail store Clovis, California.

5.     Defendant Pier 1 Imports, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Fort Worth, Texas. Pier 1 Imports, Inc. owns and operates Pier 1 retail stores.

6.     Defendant Pier 1 Imports (U.S.), Inc. is a corporation duly organized

and existing under the laws of the State of Delaware, with its principal place of business in Fort Worth, Texas. Pier 1 Imports (U.S.), Inc. owns and operates Pier 1 retail stores.

7.     Defendant suffered or permitted Plaintiff to work and/or exercised control over the wages, hours, or working conditions of Plaintiff and the proposed class members, as alleged herein. Defendant drafted and implemented the written policies and procedures applicable in each retail store described herein, including those policies concerning Call-In scheduling policies.

8.     Plaintiff does not know the true names or capacities, whether individual, partner, or corporate, of the defendants sued herein as DOE Defendants and for that reason, said Defendants are sued under such fictitious names, and Plaintiff prays for leave to amend this complaint when the true names and capacities are known. Plaintiff is informed and believes, and based thereon alleges, that each fictitious Defendant is responsible in some way for the matters alleged herein and proximately caused and/or contributed the injuries referenced herein.

## JURISDICTION AND VENUE

9.     The United States District Court for the Eastern District of California, Fresno Division, has jurisdiction over the claims alleged herein, which involve the laws and regulations of the State of California, including alleged violations of the California Labor Code, California Business and Professions Code, and Title 8 of the California Code of Regulations, under the Class Action Fairness Act. Specifically, there is minimal diversity between the parties, and Plaintiff's claims, on behalf of the putative class, exceed $5,000,000.00 in the aggregate.

10.     Venue is proper in this Court because Defendant regularly conducts business in Fresno County, Plaintiff lives in Fresno County, and the conduct alleged herein occurred within Fresno County.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11.     Defendant has established and maintained two scheduling policies that

operate in a functionally identical manner. Both scheduling practices apply to Plaintiff and the putative class in the same manner. First, Defendant utilizes a traditional form of "Show-Up" scheduling, whereby Defendant's employees are scheduled to work, required to report for a scheduled work shift, and report for the scheduled work shift by physically showing up at one of Defendant's stores.

12.    Defendant has also established a "Call-In" scheduling policy. Call-In shifts can be scheduled immediately before or after a Show-Up shift, or they are scheduled on days where an employee is not scheduled to work a Show-up shift. Like Show-Up scheduling, Defendant's Call-In scheduling policy is mandatory, and requires employees to be available to work a scheduled shift.

13.    When an employee is scheduled for a Call-In shift immediately before a Show-Up shift, or on days when the employee is not scheduled for a Show-Up shift, Defendant's employees are required to "call-in" and report for work one to two hours before the start of the scheduled shift. In making this required phone call, employees must wait for a manager to make a determination as to whether the employee must physically show up, and completing the phone call takes anywhere from five to fifteen minutes.

14.    When an employee is scheduled for a Call-In shift immediately after a Show-Up shift, the employee must wait until the end of the Show-Up shift to ask their manager if they will be permitted to work the Call-In shift.  When employees report for these Call-In shifts, they do so immediately before, or at the beginning of, the scheduled Call-In shift.

15.    Call-In shifts are mandatory, and Defendant treats Call-In shifts – both in terms of mandated employee availability and discipline – the same as Show-Up shifts. However, while employees must treat all Call-In shifts as mandatory, Defendant frequently does not allow employees to work a scheduled Call-In shift, thereby depriving the employee of the opportunity to earn wages for the time they have made available to Defendant.  Indeed, even though Plaintiff was

scheduled to work Call-In shifts three to four times per week, Plaintiff was permitted to work a Call-In shift approximately once a month.

16.     Regardless of how many days and hours employees are *in fact* permitted to work, employees are required to mold their lives around the possibility that they will work each and every Call-In shift.

17.     Call-In shifts impose the same restrictions on an employee's personal autonomy as Show-Up shifts. Employees are required to tailor their lives around mandatory Call-In shifts in the same manner as a Show-Up shift.  Employees must make preparations for Call-In shifts that are indistinguishable from the preparations required to report for a Show-Up shift.  As a result, compliance with Defendant's Call-In policy imposes a global restriction on the employees' ability to plan to use time in which they are scheduled to work for any other purpose, without compensation.

18.     For example, employees must arrange child and elder care as though they will be working each and every Call-In shift.  Employees cannot schedule shifts with other employers when scheduled for Call-In shifts. Employees cannot plan to attend college courses, schedule doctor's appointments, or make plans with friends and family when scheduled for Call-In shifts. Such a scheduling practice also makes it nearly impossible for employees to navigate eligibility requirements for government benefits such as health insurance, child care subsidies, food stamps and housing assistance – all of which are typically based on income, and in the case of child care, hours worked per week.

19.     Unless employees are permitted to work a Call-In shift, Defendant does not compensate its employees for complying with the Call-In scheduling policy.  Employees are not compensated for the time they were required to make available to Defendant, and Defendant does not compensate employees for the time it takes to complete the Call-In inquiry.

20.     Defendant's failure to compensate its employees for complying with

the Call-In policy is unlawful in several respects.  When employees "call in" to report for work, they are doing so under Defendant's control.  This control requires employees engage in a specified activity at a specified time, and prevents the employee from choosing how he or she will spend that time.  Because employees are not permitted to effectively use their time for their own purposes when making the call-in inquiry, under California law, they are entitled to wages.

21.    The Call-In policy also results in widespread reporting time violations under Section 5 of Industrial Welfare Commission Wage Order 7-2001, 8 CCR § 11070(5) ("Section 5"). Section 5(A) provides that "[e]ach workday an employee is *required to report for work and does report*, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work . . . ." 8 CCR § 11070(5) (emphasis added).

22.    For Call-In shifts scheduled immediately before a Show-Up shift, or on days when no Show-Up shift is scheduled, employees report for work by calling their manager one to two hours before the shift is scheduled to begin.  When employees make this call-in inquiry, they are doing so pursuant to mandatory policy, and are presenting themselves as ready, willing, and able to work the scheduled shift.

23.    For Call-In shifts scheduled immediately after a Show-Up shift, employees are already physically present at the store, and they report for work by presenting themselves to their manager as ready, willing, and able to work the Call-In shift immediately before the Call-In shift is scheduled to begin.

## CLASS ALLEGATIONS

24.    Plaintiff seeks to represent a class (hereinafter "Class") of similarly situated individuals, defined as follows:

All individuals employed by Pier 1 Imports, Inc., or Pier 1 Imports (U.S.), Inc. retail stores in the State of California during the Class

Period who were classified as "non-exempt" from overtime pay. Additionally, Plaintiff seeks to represent a subclass consisting of:

> All members of the foregoing Class whose employment with Defendant terminated during the Class Period.

(hereinafter referred to as the "Separated Employee Subclass")

As used herein, the term "Class Period" means the time frame commencing four years prior to the date the original complaint in this action was filed and continuing until the time that judgment is entered in this case.

Excluded from the Class are Defendant, its owners, directors, officers, executives, and all management personnel whose responsibility it was to maintain and/or enforce the policies, procedures, customs and/or business practices complained of herein.

25. **Numerosity:**  The members of the Class are so numerous that joinder of all members would be impractical, if not impossible. On information and belief, Plaintiff alleges the proposed class numbers in the thousands.

26. **Ascertainability**: The identities of the members of the Class are readily ascertainable by review of Defendant's records, including, but not limited to, payroll records, timekeeping records, schedules, and other documents and other business records that Defendants are required by law to maintain.

27. **Commonality/Predominance**: There are predominant common questions of law and fact and a coherent community of interest between Plaintiff and the claims of the Class, concerning Defendant's treatment of them, including, but not limited to:

> a. Whether Defendant lacked a written policy regarding the Reporting Time Pay required under the applicable Wage Order;
>
> b. Whether Defendant maintained a custom and business practice of failing to pay Reporting Time Pay;
>
> c. Whether Defendant failed to pay premium wages required by the

Wage Order's Reporting Time Pay regulations;

   d.  Whether Defendant failed to record all time worked by class members;

   e.  Whether Defendant failed to pay for all time worked by class members;

   f.  Whether Defendant failed to pay all earned wages at the time of termination of employment of those included in the Separated Employee Subclass;

   g.  Whether Defendant failed to provide class members with accurate itemized pay statements;

   h.  Whether the Defendant's actions, as alleged herein, were unlawful and constitute unfair and/or unlawful business practices.

28. **Typicality:** Plaintiff's claims are typical of the claims of all members of the Class. Plaintiff, herself, has suffered and been damaged by the violations of the Labor Code, Wage Order, and Bus. & Prof. Code alleged herein.

29. **Adequacy of Representation:** Plaintiff is fully prepared to take all necessary steps to represent, fairly and adequately, the interests of the above-defined Class. Plaintiff's attorneys are ready, willing, and able to fully and adequately represent the Class and individual Plaintiff. Plaintiff's attorneys have prosecuted and settled wage-and-hour class actions in the past and currently have a number of wage-and-hour class actions pending in the California state and federal courts, as well as elsewhere in the United States.

30. **Superiority:** A class action is the superior means of litigating the Class' claims. The claims set forth herein are based on Defendant's systemic treatment of the Class members and, as such, the same body of evidence necessary to prove one claim would be accessed to prove each Class member's claim. Proof of Defendant's wrongdoing may be shown by a common body of evidence. It is preferable, from an efficiency and case management standpoint, that the claims of

all of the Class members be litigated as a single litigation, rather than as thousands of individual claims.

## FIRST CAUSE OF ACTION

### FOR FAILURE TO PAY REPORTING TIME PAY FOR
### (CALL-IN SHIFTS)
### (8 CCR § 11070(5); Labor Code § 558)

31.     Plaintiff hereby incorporates by reference the preceding paragraphs of this complaint as though set forth in full at this point.

32.     The applicable Wage Order requires that on each workday that an employee reports for work, as scheduled, but is not put to work or is furnished less than half of the employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage. The applicable Wage Order denominates this as "Reporting Time Pay."

33.     For Call-In shifts, Defendant's employees are scheduled to work, required to report for work, and do, in fact, report for work when scheduled. This occurs in one of two ways. First, when employees are scheduled for a Call-In shift immediately before a Show-Up shift, or on days when the employee is not scheduled for a Call-In shift, the employee reports for work by calling their manager one to two hours before the start of the shift to determine if they will be permitted to work the shift. Second, when Call-In shifts are scheduled immediately after a Show-Up shift, employees who are already present at the store report for work by waiting until the beginning of the Call-In shift to inquire with their manger if they will be permitted to work the Call-In shift.

34.     Like Show-Up shifts, Call-In shifts are mandatory and employees must tailor their lives around the call-in schedule. Employees are operating under Defendant's control when making the Call-In inquiry. Employees must be

available to work a Call-In shift, or face discipline. Indeed, employees are instructed to treat Call-In shifts the same as Show-Up shifts.

35.    As a uniform practice, Defendant does not compensate its employees in any manner when they report for a Call-In shift, but are not permitted to work the shift.

36.    Repeatedly over the course of their employment, on dates and occasions known better to Defendant and as will be reflected in Defendant's business records, Plaintiff (and, on information and belief, the proposed class members), have reported for work at their scheduled start time, as required by Defendant, but have not been put to work or were furnished work for less than half of their scheduled shifts.

37.    Defendant's failure to pay Plaintiff and proposed Class members pursuant to the Wage Order is unlawful.

38.    Plaintiff and the proposed Class members are entitled to recover the premium wages prescribed by the Wage Order (for each scheduled or regular shift where they reported for work, as required, but were not permitted to work or for which they worked less than half of the regular or scheduled shift) in an amount of no less than two hours, nor greater than four, whichever is greater, for each such occurrence, for each member of the Class.

39.    In addition to the recovery of the premium wages under the Wage Order, Plaintiff and the proposed Class members are entitled to recover a civil penalty under Labor Code section 558, against the Defendants, for their violation of the Wage Order, in an amount equal to $50 for the first such violation and $100 for each subsequent violation, for each employee suffering the violation.

## **SECOND CAUSE OF ACTION**

### **Failure to Pay Minimum Wage**

### **(Cal. Lab. Code §§ 1182.11, 1182.12, 1194, 1194.2, 1197; Wage Order)**

40.    Plaintiff repeats and realleges by reference the allegations set forth

1  above, as though set forth herein in full.

2      41.    Defendant failed to pay at least the minimum wage to Plaintiff and

3  other members of the class, in violation of California Labor Code sections 1182.11,

4  1182.12, 1194, and 1197, as well as the applicable Wage Order (8 CCR

5  § 11070(4)).

6      42.    Under California law, "hours worked" is defined as "the time during

7  which an employee is subject to the control of an employer, and includes all the

8  time the employee is suffered or permitted to work, whether or not required to do

9  so."

10      43.    Pursuant to Defendant's Call-in Scheduling Policy, Plaintiff reports to

11  work by calling Defendant one hour before the scheduled start of her shift. This

12  process universally requires Plaintiff and other calling employees be placed on

13  hold while a manager determines if the employee should physically show up for a

14  scheduled shift. Plaintiff, and on information and belief, the putative class

15  members, expend anywhere from ten to fifteen minutes to complete the call and

16  determine if they should physically show up for the scheduled shift.

17      44.    When Plaintiff and putative class members make this call to determine

18  if they should physically show up for a scheduled shift, they are doing so pursuant

19  to Defendant's mandatory employment policies, and these employees are subject to

20  Defendant's control when they make this call. Plaintiff and the putative class

21  members are not compensated with any wages for the time in which they are

22  required to make this call and determine whether they should physically show up

23  for a scheduled shift.

24      45.    Accordingly, Defendant was required to compensate Plaintiff with at

25  least the minimum wage for all hours worked. Defendant failed to do so, and

26  pursuant to California Labor Code section 1194(a), Plaintiff and all similarly

27  affected employees are now entitled to recover "the unpaid balance of the full

28  amount of this minimum wage or overtime compensation, including interest

11

COMPLAINT

1   thereon, reasonable attorney's fees, and costs of suit."

2   46.   Pursuant to California Labor Code section 1194.2(a), Plaintiff and all
3   similarly affected employees are now "entitled to recover liquidated damages in an
4   amount equal to the wages unlawfully unpaid and interest thereon."

5   **THIRD CAUSE OF ACTION**

6   **FAILURE TO KEEP REQUIRED RECORDS**

7   **(Labor Code §§ 1174, et seq.; Wage Order)**

8   47.   Plaintiff repeats and realleges by reference the allegations set forth
9   above, as though set forth herein in full.

10   48.   The Labor Code and applicable Wage Order require employers to
11   keep certain accurate business records, including each employee's daily hours
12   worked (when each employee began and ended each work period, the start and end
13   of meal periods, total daily hours worked, total hours worked in the pay period).  In
14   addition, the employer is required to accurately record and report the information
15   required to be provided with each pay check, pursuant to Labor Code section 226,
16   including all applicable rates of pay and the number of hours worked at each
17   applicable rate.

18   49.   Any employer who fails to maintain such records or to accurately
19   maintain such records is subject to a civil penalty, under Labor Code section
20   1174.5 and under the Wage Order.

21   50.   Plaintiff alleges that Defendant failed to keep accurate payroll and
22   timekeeping records, as required by law. Specifically, Plaintiff alleges that
23   Defendant failed to keep accurate records of all time worked, including time spent
24   completing the call-in inquiry and the rates and premium wages due to them as
25   Reporting Time Pay.

26   51.   Plaintiff and putative class members are entitled to the civil penalties
27   imposed by the Labor Code and the applicable Wage Order.

28   / / /

## FOURTH CAUSE OF ACTION

## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

### (Labor Code §§ 226, 226.3; Wage Order)

52.     Plaintiff repeats and realleges by reference the allegations set forth above, as though set forth herein in full.

53.     Pursuant to the Labor Code and the Wage Order, every employer must provide accurate itemized wage statements at the time employees are paid, showing accurate figures for, *inter alia*, gross wages earned, total hours worked, net wages earned, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

54.     Plaintiff and putative class members did not receive accurate itemized wage statements, as required by law, in that the wage statements provided to them did not accurately reflect correct figures for gross wages earned, total hours worked, net wages earned, and/or all applicable hourly rates in effect with the corresponding number of hours worked at each hourly rate.

55.     As a result of Defendant's failure to provide the accurate itemized wage statements required by law, Plaintiff and putative class members have been injured in the manner set forth in the Labor Code.

56.     Plaintiff and putative class members are entitled to the penalty set forth at Labor Code section 226(e), to injunctive relief to ensure compliance with the law, to the civil penalty set forth in Labor Code section 226.3, to the civil penalty set forth in the applicable Wage Order, actual damages, costs of suit, and reasonable attorneys' fees.

/ / /

/ / /

/ / /

/ / /

## FIFTH CAUSE OF ACTION

## FAILURE TO PAY ALL EARNED WAGES

## UPON SEPARATION FROM EMPLOYMENT

### (Labor Code §§ 200-203)

57.   Plaintiff repeats and realleges by reference the allegations set forth above, as though set forth herein in full.

58.   Labor Code §§ 201 and 202 require that Defendant pays their employees all wages due within 24 hours after a discharge or 72 hours after a resignation from employment, if the employee has given less than 72 hours notice. Labor Code § 203 provides that if an employer willfully fails to timely pay such wages the employer must, as a penalty, continue to pay the employee's daily wage until the back wages are paid in full or an action is commenced. The penalty cannot exceed 30 days of wages.

59.   Plaintiff was separated from Defendant's employ in August of 2015. Plaintiff and Subclass members were not paid for all earned wages at the time of their separation from Defendant's employ. Plaintiff alleges that Defendant's custom, practice, and/or policy was not to pay for previously earned Reporting Time Wages or unrecorded time spent under Defendant's control, at the time that final wages were paid.

60.   More than 30 days have passed since Plaintiff and Subclass members terminated from their employment with Defendant. Defendant has not paid Plaintiff and each Subclass member, whose employment has ended, all wages owed.  As a consequence of Defendant's willful conduct in not paying Plaintiff and each Subclass member all earned wages at the time their employment with Defendant ended, Plaintiff and each terminated Subclass member is entitled to 30 days' wages as a penalty under Labor Code § 203.

/ / /

/ / /

COMPLAINT

# SIXTH CAUSE OF ACTION

## UNLAWFUL BUSINESS PRACTICES

### (Bus. & Prof. Code §§ 17200, *et seq.*)

61.     Plaintiff repeats and realleges by reference the allegations set forth above, as though set forth herein in full.

62.     Section 17200 of the California Business and Professions Code prohibits any unlawful business act or practice.

63.     Plaintiff brings this cause of action in a representative capacity on behalf of the general public and the persons affected by the unlawful conduct described herein.  Plaintiff and putative class members have suffered and continue to suffer injury in fact and deprivation of wages and monies as a result of Defendant's actions.

64.     The actions of Defendant, as herein alleged, amount to conduct which is unlawful and a violation of law.  As such, said conduct constitutes unlawful business practices, in violation of Bus. & Prof. Code §§ 17200, *et seq*.

65.     Defendant's conduct as herein alleged has damaged Plaintiff and putative class members by denying them wages due and payable, and by failing to provide proper wage statements. Defendant's actions are thus substantially injurious to Plaintiff and putative class members, causing them injury in fact and loss of money.

66.     As a result of such conduct, Defendant has unlawfully obtained monies owed to Plaintiff and putative class members.

67.     All members of the Class can be identified by reference to payroll and related records in the possession of the Defendant.  The amount of wages due to Plaintiff and members of the Class can be readily determined from Defendant's records and/or proper scientific and/or expert evidence. The members of the proposed class are entitled to restitution of monies due and obtained by Defendant during the Class Period as a result of Defendant's unlawful conduct.

68.     Defendant's course of conduct, acts, and practices in violation of the California laws and regulations, as mentioned in each paragraph above, constitute distinct, separate and independent violations of Sections 17200, *et seq*. of the Business and Professions Code.

### SEVENTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

### (Bus. & Prof. Code §§ 17200 *et seq.*)

69.     Plaintiff repeats and realleges by reference the allegations set forth above, as though set forth herein in full.

70.     When Defendant schedules Plaintiff an the proposed Class members for future shifts, they include Call-In shifts.  Whenever a Call-In shift appears on an employee's schedule, the worker is required to call his or her manager or supervisor two hours in advance of the Call-In shift to determine if he or she needs to report to work for the hours encompassed by the Call-In shift.  Plaintiff has routinely been subjected to the Call-In schedule.

71.     Plaintiff and the Class members have been instructed by Defendant to treat the Call-In shifts as actual, scheduled work time.  Defendant has told Plaintiff and putative class members that failure to report for a Call-In shift is treated as tardiness and/or absence, just as with a Show-Up shift, and subject to discipline just the same as a Show-Up shift.

72.     Call-In shifts may be scheduled before a Show Up or after it, or they may be scheduled with no other Show Up shift also scheduled for the particular day.

73.     When Call-In scheduling and Show-Up scheduling are aggregated, employees may be, for example, scheduled to work upwards of four days per week, even though they may only be permitted to earn wages for one day per week. Employees have no way of knowing whether they will *in fact* be permitted to work until two hours before the beginning of the Call-In shift.

74. Regardless of how many days employees are *in fact* permitted to work, employees are required to mold their lives around the possibility that they will work four days a week. For example, employees cannot schedule shifts with other jobs during those scheduled hours, even though there is a substantial likelihood employees will <u>not</u> be permitted to work a Call-In shift. Employees cannot plan to attend college courses, schedule doctor's appointments, or make plans with friends and family during those hours. Employees with children may have to arrange child care for those four days a week, even though they ultimately will not be permitted to earn wages. For employees who require government assistance, Defendant's Call-In scheduling policy may make it exceedingly difficult, if not impossible, for employees to navigate eligibility requirements for government benefits such as health insurance, child care subsidies, food stamps and housing assistance.

75. In summary, as a result of Defendant's Call-In scheduling policy, employees suffer a global restriction of their personal autonomy and their ability to plan any personal pursuits for the time in which they are scheduled to work a Call-In shift. However, Defendant's employees are not permitted to earn wages or otherwise compensated for the significant sacrifice implicit in complying with Defendant's Call-In scheduling policy. Moreover, due to the unpredictable nature of Defendant's Call-In policy, employees can never know if they will be able to meet their budgetary needs.

76. California's wage and hour laws reflect the strong public policy favoring protection of workers' general welfare and society's interest in a stable job market. For all the reasons discussed herein, Defendant's Call-In scheduling policy wholly undermines California's long-standing interest in promoting workers' general welfare. The restrictions placed on employee personal autonomy, without compensation, have serious effects on the welfare of Defendant's employees, as well as their families. Stated differently, and for all the reasons discussed herein,

Defendant's Call-In scheduling policy is immoral, unethical, oppressive, unscrupulous and otherwise is substantially injurious to its employees.

77.     There is no utility to Defendant's Call-In scheduling policy. The purpose of the Call-In scheduling policy is to maximize Defendant's profits at the expense of its employees' welfare and a stable job market in the State of California. The gravity of harm to Defendant's employees, on the other hand, for all the reasons discussed herein, is substantial. Thus, the gravity of harm to Defendant's employees substantially outweighs any utility of the Call-In scheduling policy. Stated differently, Defendant's Call-In scheduling policy negatively impacts its employees in a manner that outweighs any reasons, justifications, and motives Defendant can provide.

78.     Section 5 of the Wage Order, providing for reporting time pay, is intended to guarantee compensation for employees who tailor their lives around a work schedule, but are not permitted to earn wages due to inadequate scheduling or lack of proper notice by the employer. Viewed from a remedial perspective, reporting time laws exist not only to compensate employees, but also are intended to shape employer conduct by encouraging proper scheduling practices.

79.     In addition to promoting proper notice and scheduling practices, the underlying intent, policy, and purpose of Section 5 of the Wage Order, as stated by both the Industrial Welfare Commission (the "IWC"), the organization responsible for setting the working conditions of California employees, as well as the Division of Labor Standards Enforcement (the "DLSE"), the organization responsible for enforcing California employment laws, is to compensate employees when they are required to be available to work, make themselves available to work, but are not afforded the opportunity to earn wages. Indeed, the DLSE has specifically noted that an employee should be compensated with reporting time pay "for at least a portion of the time [the employee] makes [herself] available to the proposed employer."

80.     Defendant's Call-In scheduling policy globally undermines the purposes of Section 5. Like the more familiar form of Show-Up scheduling, Defendant's Call-In scheduling policy requires employees to conform their lives around a mandatory work schedule. Employees are scheduled to work, expect to work – indeed, employees are *required* to expect to work, or face discipline – and report to work by calling in immediately before a shift begins. Frequently, however, employees are not permitted to work a scheduled Call-In shift. When this occurs, employees are never compensated for the sacrifices they must make in order to report for a scheduled Call-In shift. This is the precise wrong sought to be remedied by Section 5: an improper scheduling practice that fails to properly compensate employees who adapt their lives around a work schedule.

81.     Defendant's Call-In scheduling policy is further unfair, and simultaneously, undermines fair competition, by shifting the risks implicit in scheduling to its employees – all while undermining the purposes of Section 5. Specifically, in a competitive marketplace, retail scheduling practices represent one of many components to maximizing profit. These scheduling practices represent a balancing act between the need to maximize sales, i.e., having optimal sales floor coverage with its employees, and the need to minimize employee overhead costs. Sometimes, retailers are overleveraged and realize greater than optimal employee overhead costs. Other times, retailers are underleveraged and cannot maximize sales.

82.     Defendant's Call-In policy, however, harms fair competition by violating the spirit and purpose of reporting time laws and shifting the risks implicit in scheduling to the employee.  Specifically, rather than risk greater than optimal employee overhead – something every retailer must do when complying with the purpose of reporting time laws – Defendant's Call-In policy allows them to *require* an employee report to work any time, but at no time would Defendant have to furnish reporting time pay or provide the employee an opportunity to earn

wages, despite the fact that the employee was *required* to be available to work a scheduled Call-In shift. This undermines fair competition because retailers who comply with the purposes of reporting time laws – or as the DLSE has put it, those who compensate their employees "for at least a portion of the time [the employee] makes [herself] available to the proposed employer" – cannot *always* realize optimal employee overhead costs while simultaneously realizing optimal employee presence to maximize sales. By undermining California's reporting time laws, Defendant achieves this anti-competitive advantage. And the only way Defendants are able to enjoy this anti-competitive circumstance is by passing both the risk and the burden of proper notice and scheduling practices onto the employees, in direction contravention of the purpose of Section 5, and at great expense to their employee's welfare.

83.     As such, Defendants' Call-In scheduling policy constitutes an "unfair" business practice under the UCL.

## EIGHTH CAUSE OF ACTION

**CIVIL PENALTIES UNDER THE CALIFORNIA PRIVATE ATTORNEYS GENERAL ACT ("PAGA") (Labor Code §§ 2698, *et seq.*)**

84.     Plaintiff hereby incorporates by reference the preceding paragraphs of this complaint as though set forth in full at this point.

85.     PAGA permits Plaintiffs to recover civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section 2699.5.

86.     PAGA provides as follows: "[n]otwithstanding any other provision of law, a Plaintiff may as a matter of right amend an existing complaint to add a cause of action arising under this part at any time within 60 days of the time periods specified in this part."

87.     Defendant's conduct, as alleged herein, violates numerous sections of the California Labor Code including, but not limited to, the following:

(a)     Violation of Labor Code sections 1194, 1197, and 1197.1 for

Defendant's failure to compensate Plaintiff and all aggrieved employees with at least minimum wages for all hours worked as alleged herein;

(b)     Violation of Labor Code section 226(a) for failure to provide accurate wage statements to Plaintiff and other aggrieved employees as alleged herein;

(c)     Violation of Labor Code section 1174(d) for failing to maintain records as alleged herein;

(d)     Violation of Labor Code sections 201, 202, and 203 for failure to pay all unpaid wages upon termination as alleged herein; and

(e)     Violation of Labor Code section 204 for failure to pay all earned wages owed to Plaintiff and other aggrieved employees during employment as alleged herein.

88.     California Labor Code section 1198 also makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order.   Discussed herein, Defendant's conduct violates Wage Order number 7, Section 5, requiring reporting time pay for the Call-In Policy.

89.     California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.

90.     California Labor Code section 210 provides: "In addition to, and entirely independent and apart from, any other penalty provided in this article,

every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 205, 205.5, and 1197.5, shall be subject to a civil penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

91.     Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee."  Labor code section 558(c) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

92.     Defendant, at all times relevant to this complaint, were employers or persons acting on behalf of an employer(s) who violated Plaintiff's and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

93.     As set forth above, Defendant has violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable order of the IWC.  Accordingly, Plaintiff seeks the remedies set forth in Labor Code section 558 for herself, the State of California, and all other aggrieved employees.

94.   Pursuant to PAGA, and in particular California Labor Code sections 2699(a), 2699.3, 2699.5 and 558, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of unpaid wages and civil penalties for Plaintiff, all other aggrieved employees, and the State of California against Defendant, in addition to other remedies, for violations of California Labor Code sections 201, 202, 203, 204, 210, 221, 224, 226(a), 226.7, 510, 512(a), 1174, 1194, 1197, 1197.1, 1198, 2800 and 2802.

95.   Plaintiff claims herein all penalties permitted by the Private Attorneys General Act of 2004 (PAGA), Labor Code § 2698, *et seq.*, and has complied with the procedures for bringing suit specified by Labor Code § 2699.3.  By letter dated January 15, 2016, Plaintiff gave written notice by certified mail to the Labor and Workforce Development Agency ("LWDA"), and Defendant, of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, and on behalf of the members of the Class, prays for judgment against Defendant as follows:

A.   For an order certifying the proposed class;

B.   For the attorneys appearing on the above caption to be named class counsel and for the named Plaintiff to be appointed class representatives;

C.   For compensatory damages in an amount according to proof with interest thereon;

D.   For economic and/or special damages in an amount according to proof with interest thereon;

E.   For payment of unpaid wages in accordance with California labor and employment law, including, where applicable, liquidated damages;

F.   For payment of penalties in accordance with California law;

G.   For Defendant to be found to have engaged in unfair competition in violation of Bus. & Prof. Code §§ 17200, *et seq.*;

H.   For a permanent injunction against Defendant's Call-In scheduling practice;

I.   For Defendant to be ordered and enjoined to make restitution to Plaintiff and the Class and disgorgement of profits from their unlawful business practices and accounting, pursuant to Business and Professions Code §§ 17203 and 17204;

J.   For interest, attorneys' fees and cost of suit under Labor Code §§ 226 and 1194 and Code of Civil Procedure §1021.5;

K.   For all penalties permitted by California's Private Attorney General's Act (PAGA), Labor Code section 2698, *et seq.*; and,

L.   For all such other and further relief that the court may deem just and proper.

Respectfully Submitted,

Dated:  January 20, 2016          **MARLIN & SALTZMAN, LLP**

By:   /s/  Stanley D. Saltzman
Stanley D. Saltzman, Esq.
Attorneys for Plaintiff
and the Proposed Class

## JURY DEMAND

Plaintiff, on behalf of herself and all others similarly situated, hereby does demand a trial by jury in this case.

Dated:  January 20, 2016          **MARLIN & SALTZMAN, LLP**

By:   /s/  Stanley D. Saltzman
Stanley D. Saltzman, Esq.
Attorneys for Plaintiff
and the Proposed Class