UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN MATHEIN and CHRISTINE SABAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PIER 1 IMPORTS (U.S.), INC.,<br><br>Defendant. | No.: 1:16-cv-00087-DAD-SAB<br><br>ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(Doc. Nos. 42, 48) |

This matter is before the court on plaintiffs' unopposed motion for preliminary approval of a class action settlement and certification of the class for purposes of settlement. (Doc. No. 42.) Oral argument on the motion was heard on October 17, 2017. Attorneys Stanley D. Saltzman and William A. Baird appeared at the hearing on behalf of plaintiffs Lauren Mathein and Christine Sabas. Attorneys Gregory Knopp and Galit Knotz appeared on behalf of defendant Pier 1 Imports (U.S.), Inc. At that hearing, the court requested that plaintiffs submit additional information and briefing addressing the full value of their claims were they to prevail in full at trial. Plaintiffs submitted that additional briefing on October 24, 2017. (Doc. No. 48.) For the reasons set forth below, the court will grant plaintiffs' motion.

/////

/////

1

**FACTUAL BACKGROUND**

On January 20, 2016, the original class action complaint against defendant Pier 1 Imports (U.S.) was filed. (Doc. No. 1). This action now proceeds on plaintiffs' First Amended Complaint ("FAC"), filed on September 8, 2016. (Doc. No. 21.) The primary issue in this case revolves around whether defendant's "Flex Shift" policy violated various provisions of the applicable California wage order. (Doc. No. 42 at 10.) As part of that "Flex Shift" policy, associates would report to work, either by phone or in person, before learning if she or he would actually be able to work the flex shift and earn wages. (*Id.*) Plaintiffs alleged the following causes of action: (i) failure to pay reporting time pay; (ii) failure to pay minimum wage; (iii) failure to maintain required business records; (iv) failure to furnish proper wage statement stubs; (v) failure to pay all wages earned at termination; (vi) failure to reimburse business expenses; (vii) failure to pay split shift premiums; (viii) violations of California Business and Professions Code § 17200; and (ix) violations of the California Private Attorneys General Act ("PAGA"). (Doc. No. 21.)

After plaintiffs filed suit, the parties engaged in "extensive written discovery consisting of sets of interrogatories, requests for admission, and requests for production." (Doc. No. 42 at 11.) Plaintiffs Mathein and Sabas, as well as defendant's Person Most Qualified ("PMQ") were deposed in 2016 and 2017. (*Id.* at 12.) On February 17, 2017, defendants filed a motion for summary judgment (Doc. No. 27), to which plaintiffs filed an opposition on March 7, 2017. (Doc. No. 30.) The court took the motion under submission following oral argument. (Doc. No. 33.) Thereafter, on April 20, 2017, the parties requested and the court agreed to defer ruling on defendant's motion for summary judgment and suspended all deadlines pending the parties' private mediation efforts. (Doc. No. 36.) On May 17, 2017, the parties filed a stipulation informing the court of a scheduled mediation with David Rotman, Esq. on August 9, 2017. (Doc. No. 37.)

The proposed class for purposes of settlement is defined as "all current and former non-managerial associates who are/were working for defendants in a store in California from January 20, 2012 up through March 26, 2016." (Doc. No. 42 at 14.) Under the proposed settlement agreement, defendant offers a maximum settlement amount ("MSA") of $3,500,000. (Doc. No.

42-1 at ¶ 22). The proposed settlement agreement provides that the following deductions be made from the MSA: (i) administration costs not to exceed $62,500; (ii) attorneys' fees in the amount of one-third of the MSA ($1,166,550) paid to class counsel, plus reimbursement of reasonable and actual expenses, not to exceed $31,500; (iii) enhancement payment of $12,500 paid to each plaintiff in addition to plaintiff's entitlement as a class member; (iv) employers' payroll taxes; (v) $15,000 allocated to settle the portion of the case brought under the PAGA, with 75% of the PAGA payment paid to the California Labor & Workforce Development Agency, and 25% of the PAGA payment included in the class fund. (Doc. No. 42 at 14–15.) The remaining funds make up the Net Settlement Amount ("NSA"), which is estimated to be $2,203,200. (*Id.* at 15.) The NSA will be distributed to settlement class members on a proportional basis based on the number of weeks each class member worked. (*Id.* at 28.)

On September 15, 2017, plaintiffs filed this unopposed motion for preliminary approval of the class action settlement. (Doc. No. 42.) Plaintiffs filed supplemental briefing on October 24, 2017. (Doc. No. 48.) Plaintiffs seek an order: (i) preliminarily approving the settlement agreement; (ii) conditionally certifying the case for settlement purposes; (iii) directing that the notice packet be mailed to class members; and (iv) scheduling a final approval hearing with respect to the settlement agreement. (*Id.* at 30.)

**LEGAL STANDARD**

Rule 23 mandates that, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The following procedures apply to the court's review of the proposed settlement:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> . . .

3

>Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, it has been recognized when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. The court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

When parties seek class certification only for purposes of settlement, Rule 23 "demand[s] undiluted, even heightened, attention" to the certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014); *West v. Circle K Stores, Inc.*, No. 04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* MANUAL FOR COMPLEX LITIGATION (4TH) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *Id.* Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined).

4

Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Here, the parties move for preliminary approval of a class settlement and conditional class certification for purposes of settlement. (Doc. No. 42 at 9.) Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011); *see also Dearauju v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class].").

## ANALYSIS

**A.     Preliminary Evaluation of Fairness of Proposed Class Action Settlement**

First, the court must conduct a preliminary fairness evaluation of the proposed class action settlement, pursuant to Rule 23(e). While it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the stage of the proceedings; and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court should also watch for collusion between class counsel and defendant. *Id.* Preliminary approval is appropriate "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range

of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.

      1.      <u>Rule 23(a) Requirements</u>

           a.      *Negotiations*

This settlement appears to be the product of serious, substantial, and arms-length negotiations. Plaintiffs have represented that they conducted significant investigation of the facts prior to filing the lawsuit. (Doc. No. 42 at 20–21.) After plaintiffs filed suit, the parties engaged in extensive written discovery including interrogatories, requests for admission, and requests for production. (*Id.* at 11.) The parties conducted meet and confer sessions about the discovery and additional documents were produced as a result. As noted, the two class representative plaintiffs and defendant's PMQ were deposed. (*Id.* at 12.)

Defendants filed a motion for summary judgment on February 27, 2017 (Doc. No. 27), which was extensively briefed by both parties. (Doc. Nos. 30, 31.)[1] Prior to this court issuing a written decision on that motion, the parties filed a stipulation informing the court of their agreement to pursue mediation. (Doc. No. 34.) Before the formal mediation, the parties engaged in informal discussions and produced various documents, such as class member payroll information, in order to facilitate the mediation. (Doc. No. 42 at 12–13.) The mediation session took place on August 9, 2017 in San Francisco with mediator David Rotman, Esq. (*Id.* at 13.) After a full day session, the parties concluded the formal mediation without a settlement but with signs of clear progress. (*Id.*) Afterwards, the parties continued to engage in negotiations and eventually accepted a mediator's proposal. (*Id.*)

Based upon this history, the court is convinced that the parties' negotiations were extensive, involved, and non-collusive, lending weight to the fairness of the settlement and the this motion for preliminary approval.

           b.      *Deficiencies*

A proposed settlement does not meet the test for preliminary fairness if there are any obvious deficiencies in the proposed agreement. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d

---

[1] Plaintiffs submitted an application to extend page limitations for their opposition to defendant's motion for summary judgment. (Doc. No. 28.)

1 at 1079. This settlement sets the MSA that defendant will pay at $3,500,000. The parties propose
2 that the following items are deducted from the MSA: (i) administration costs not to exceed
3 $62,500; (ii) the fee and expense award for class counsel; (iii) the enhancement payment to
4 plaintiffs; (iv) the employer's payroll taxes; and (v) the PAGA payment. (Doc. No. 42 at 15.)
5 The remaining amount will be distributed to settlement class members on a proportional basis
6 based on the amount of weeks each class member worked during the period of January 20, 2012
7 through March 26, 2016. (*Id.*) The parties have indicated that the settlement is not conditioned
8 on any particular award for attorneys' fees, expenses, or incentive awards. (Doc. 42-2 at 12.)
9 Further, the settlement provides a means for class members to exclude themselves from the
10 settlement. (*Id.* at 15–16.) The release of liability appears reasonably tailored to the claims
11 presented in the action. (Doc. No. 48-2 at 8–12.) The settlement agreement provides for a
12 settlement administrator to coordinate notice to the class, any requests for exclusion, and
13 payments to class members upon final approval. (Doc. No. 42 at 24.) The court is satisfied there
14 are no obvious deficiencies with the proposed settlement.

      *c.*  *Preferential Treatment*

16   In making a preliminary fairness determination, the court must assure itself that the
17 proposed settlement does not provide preferential treatment to certain members of the class or the
18 named plaintiffs. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. As noted above, the
19 settlement terms provide for the NSA to be divided among class members in proportion to the
20 number of weeks each class member worked during the relevant time period. (Doc. No. 42 at
21 15.) Although this is not a precise calculation of the number of flex shifts worked by each class
22 member, the court recognizes the difficulty of mining such data as described by the parties and
23 finds that this is an acceptable manner of determining the distribution of settlement proceeds to
24 class members. The court therefore turns to the attorneys' fees provisions, the anticipated
25 incentive fees, and the other administrative costs.

26   When a negotiated class action settlement includes an award of attorneys' fees, the fee
27 award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312
28 F.3d 1123, 1126 (9th Cir. 2002). Where, as here, fees are to be paid from a common fund, the

relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). Thus, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009). Similarly, while "[i]ncentive awards are fairly typical in class action cases," *Rodriquez*, 563 F.3d at 958–59, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. . . . [C]oncerns over potential conflicts may be especially pressing where . . . the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citations omitted).

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (EX), 2016 WL 6211308, at *1 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Nonetheless, an

8

explanation is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

Here, class counsel state they will seek an award of one-third of the MSA in attorney's fees, in addition to reimbursement of reasonable and actual expenses, not to exceed $31,500. (Doc. No. 42 at 15.) This fee amount is above the benchmark for this circuit. *See Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same). However, the percentage is not unreasonable as an upper bound. As such, the court will grant preliminary approval. *See Vizcaino*, 290 F.3d at 1047 (observing that percentage awards of between twenty and thirty percent are common); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). In connection with the final fairness hearing, however, the court will consider any objections as well as the evidence presented by counsel and determine whether the award of an above-benchmark percentage in fees is reasonable in this case. *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (noting that an explanation is necessary when the district court departs from the twenty-five percent benchmark).

Plaintiffs will also seek an incentive award of $12,500 each for the named plaintiffs, which is 0.3% of the MSA. (*Id.*) Plaintiffs argue that the requested incentive award is

9

appropriate in light of their efforts expended during the course of the litigation. (Doc. No. 42 at 25.) Plaintiffs state that they were "actively involved in providing information and evidence" to counsel and "were always available to consult with…counsel both in person and via telephone." (*Id.*)

The incentive award provided in the settlement agreement is significantly higher than the average recovery amount of individual class members, estimated by plaintiffs to be around $375. (Doc. No. 42 at 22.) However, courts in this circuit have previously approved enhancement awards in this amount, and the court finds that such an award is "not outside the realm of what has been approved as reasonable by other courts." *Aguilar*, 2017 WL 2214936, at *8 (and cases cited therein); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *9 (N.D. Cal. Feb. 17, 2016) (approving an enhancement award of $7,500 to each class representative). Again preliminary approval will be granted. However, at the final approval hearing, the court will review the evidence presented at that time, consider and objections and determine whether the requested incentive awards are warranted here.

Plaintiffs state that the cost of claims administration in connection with this proposed settlement will not exceed $62,500, based upon the estimate provided by the selected class administration company. (Doc. No. 42 at 15, 24.) The budgeted claims administration costs are within the range of other proposed settlements submitted to this court and do not cause the court to question the preliminary fairness of this settlement. *See Dakota Med., Inc. v. RehabCare Grp., Inc.,* No. 1:14-cv-02081-DAD-BAM, 2017 WL 1398816, at *5 (E.D. Cal. Apr. 19, 2017) (administration costs of $94,000 for $25 million settlement); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 117789, at *7 (E.D. Cal. Jan. 11, 2017) (administration costs of $45,000 for $4.5 million settlement); *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115, at *1 (E.D. Cal. Dec. 22, 2016) (administration costs up to $20,000 for $290,000 settlement).

        d.     *Range of Possible Approval*

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep.*

1 *Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-
2 settled law that a cash settlement amounting to only a fraction of the potential recovery does not
3 per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d
4 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible
5 approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs'
6 expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust*
7 *Litig.*, 484 F. Supp. 2d at 1080.

8     Here, the total proposed settlement is for $3.5 million, which will be paid proportionally
9 to all class members based on the number of weeks each class member worked. (Doc. No. 42 at
10 14.) Plaintiffs state that the overall average payment for all class members will be approximately
11 $375 (i.e. $3.5 million divided by 9,339 class members). (*Id.* at 22.) After accounting for
12 deducted fees, the overall average payment for all class members will be approximately $236.
13 Given that class members often worked approximately 20 hours per week at an average of less
14 than $10 in pay per hour, plaintiffs estimate that this sum represents about two weeks of pay for
15 an average class member. (*Id.*)

16     Plaintiffs also propose calculating average payments tied to the number of "full time
17 equivalent" ("FTE") employees in order to more accurately evaluate the magnitude of the
18 payments. (*Id.* at 22–23.) The number of FTE employees is determined by estimating how many
19 class member employees were working for defendants at any given time during the class period –
20 the so-called "snapshot" of employee numbers. (*Id.*) Plaintiffs report that if there had been no
21 turnover, the data reveals that there would be approximately one thousand workers holding the
22 class positions at any given time during the class period. (*Id.*) Assuming no turnover, a class of
23 approximately one thousand workers would receive a FTE settlement award, which is calculated
24 to be approximately $2200 (after subtracting all proposed fees). This would equate to almost 11
25 weeks of pay for a FTE individual who was employed with the defendant for the complete period
26 of time covered by the class.

27     In the supplemental briefing requested by the court, plaintiffs provided estimates of the
28 value of each claim. (Doc. No. 48 at 3.) The crux of plaintiffs' case centers upon defendant's

11

failure to pay reporting time when an employee reported for a flex shift that she was not permitted to work. If they were to prevail at trial, plaintiffs value this claim at $6.2 million for the class. (*Id.*) Plaintiffs have now also provided estimates for the remaining claims, resulting in a full value global damages presentation of approximately $12 million, assuming complete victory by plaintiffs on all claims. (*Id.* at 6.) Plaintiffs acknowledge varying levels of certainty that they would prevail for each of the different claims.[2] Given the lack of clear precedent and the novelty of plaintiffs' arguments, the court finds that the proposed settlement award, which recovers approximately 28% of the global damages estimate, is fair and adequate.

For these reasons, the court finds the settlement agreement in this case to be fair for the purposes of preliminary approval.

**B.     Preliminary Certification of the Settlement Class**

Plaintiffs seek preliminary certification of the proposed California class under Federal Civil Procedure Rule 23(c)(1). Under that rule, courts must determine by order whether an action should be maintained as a class action "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1). The court must independently consider whether the proposed class meets the requirements of Rule 23 both at this stage and at the later fairness hearing. *See Pointer v. Bank of Am. Nat'l Ass'n*, No. 2:14-cv-00525-KJM-CKD, 2016 WL 696582, at *3 (E.D. Cal. Feb. 22, 2016) (citing *Amchem Prods., Inc.*, 521 U.S. at 622).

Certification requires satisfaction of the pre-requisites of Rule 23(a) and (b). *Id*. As noted above, courts analyzing a motion to certify a settlement class must pay "undiluted, even heightened attention" to Rule 23 requirements. *See Amchem*, 521 U.S. at 620, n.16. A thorough Rule 23 analysis is especially important where a motion to certify a settlement class is unopposed, because in such circumstances "[t]here is no advocate to critique the proposal on behalf of absent class members." *Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 1793774, at *1 (N.D. Cal.

---

[2] Plaintiffs recognize that the uncertain state of the law for claims involving reporting time makes the values of their claims difficult to evaluate. Cases in which similar claims have been brought, those involving workers who are required to call into shifts prior to working, have not yet resulted in appellate court decisions. *See Casas, et al., v. Victoria's Secret*, Case 2:14-cv-06412-GW-VBK (Doc. No. 107) (C.D. Cal. Nov. 21, 2017) (granting final settlement approval after the parties briefed and argued before the Ninth Circuit and then settled the reporting time issue).

12

June 19, 2007); *see also Pointer*, 2016 WL 696582, at *4 ("The problem is greater at this preliminary approval stage, where objectors are unlikely to have already appeared.").

On a motion for preliminary approval, plaintiff bears the burden of showing that the proposed class satisfies Rule 23 requirements. Even at the preliminary stage, "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Advisory Committee 2003 Note on Fed. R. Civ. P. 23(c)(1).

1.  Rule 23(a) Requirements

    a.  *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts have found this requirement satisfied when the class comprises as few as thirty-nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (discussing Ninth Circuit thresholds for numerosity)); *In re Itel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

Here, plaintiffs estimate that there are approximately 9,300 class members of non-managerial retail associates who worked for defendant during the applicable class period and were subjected to defendant's "Flex Shift" policy. (Doc. No. 42 at 8.) This is adequate to meet the numerosity requirement of Rule 23(a)(1). *See Murillo*, 266 F.R.D. at 474.

    b.  *Commonality*

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the class representatives must demonstrate that common points of fact and law will drive or resolve the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations

omitted). "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). However, the raising of merely any common question does not suffice. *See Dukes*, 564 U.S. at 349 (noting that "[a]ny competently crafted class complaint literally raises common 'questions'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–32 (2009)).

Here, plaintiffs argue that the proposed collective action involves a number of common questions of law and fact regarding defendant's Flex Shift Policy, including: (i) whether defendant maintained a custom and business practice of failing to pay Reporting Time Pay when Flex Shifts were cancelled; (ii) whether defendant failed to pay premium wages required by the Wage Order's Reporting Time Pay regulations; (iii) whether defendant maintained a custom and business practice of failing to pay Split-Shift pay; (iv) whether defendant failed to pay premium wages required by the Wage Order's Split-Shift regulations; (v) whether defendant failed to provide class members with accurate itemized pay statements; (vi) whether defendant failed to reimburse its employees for the telephone costs required to comply with its Flex Shift policy; (vii) whether the defendant's actions were unlawful and constitute unfair and/or unlawful business practices. (Doc. No. 42 at 27.) Because it appears that the same conduct that defendant allegedly engaged in "would form the basis of each of the plaintiff's claims," the court finds that commonality is satisfied here. *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 475 (E.D. Cal. 2010) (citing *Acosta v. Equifax Info. Servs., L.L.C.*, 243 F.R.D. 377, 384 (C.D. Cal. 2007)) (internal quotation omitted).

/////

/////

### c.  *Typicality*

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs allege that their claims are based on the same legal and factual claims as those of the class members. (Doc. No. 42 at 27.) Plaintiff Mathein worked for Pier 1 from September 2014 until August 2015 as a retail sales associate at a store in Clovis, California. (Doc. No. 42 at 9.) Plaintiff Sabas worked for Pier 1 from July 2014 until August 2015 as a retail sales associate at a store in Stockton, California. (*Id.*) Based on this information, the court is satisfied that plaintiffs' claims are reasonably co-extensive with those of the class and that typicality is satisfied.

### d.  *Adequacy of Representation*

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

Here, plaintiffs represent that there is no antagonism between the class representatives' interests and those of the class members, and that the class representatives possess the same

interest and suffered the same injury as members of the class. *See Amchem*, 521 U.S. at 626. Further, the class representatives maintain that they have been actively involved in providing information and bringing evidence to the attention of counsel through the prosecution of this action. (Doc. No. 42 at 25.) The representatives also regularly consulted with counsel regarding the action, appeared for depositions, and approved the terms of the settlement. (*Id.*) The court finds that plaintiffs Mathein and Sabas satisfy the adequacy of representation requirement.

Plaintiffs also seek appointment of their counsel, Stanley Saltzman and William A. Baird of Marlin & Saltzman, LLP, as settlement class counsel. Mr. Saltzman has submitted a declaration noting his extensive experience in class action litigation, including a list of over forty cases that advanced to contested certification proceedings. (*See* Doc. No. 42-3 at 2–3.) According to attorney Saltzman, he has litigated over seventy-five class action matters on behalf of plaintiffs in state and federal courts over the last twenty years. (*Id.*) The firm has handled in excess of one hundred class actions and complex commercial cases, acting as lead or co-lead counsel in nearly all of those matters. (*Id.*) Collectively, the firm has been responsible for settlements or judgments on behalf of plaintiffs totaling in excess of $850 million dollars. (*Id.*) The court thus finds that plaintiffs' counsel satisfies the adequacy of representation requirements with respect to the California class.

      2.      Rule 23(b) Requirements

The parties here also seek certification under Rule 23(b)(3). Rule 23(b)(3) requires: (i) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and (ii) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Amchem*, 521 U.S. at 615. The test of Rule 23(b)(3) is "far more demanding" than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24). The court will examine each of the requirement in turn below.

          *a.*    *Predominance*

First, the common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much

1   higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25;
2   *Hanlon*, 150 F.3d at 1022 (9th Cir. 1998). While Rule 23(a)(2) can be satisfied by even a single
3   question, Rule 23(b)(3) requires convincing proof the common questions "predominate."
4   *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022. "When common questions present a
5   significant aspect of the case and they can be resolved for all members of the class in a single
6   adjudication, there is clear justification for handling the dispute on a representative rather than on
7   an individual basis." *Hanlon*, 150 F.3d at 1022.

8   As discussed at length above, plaintiffs' complaint challenges defendant's employment
9   policies related to the "Flex Shift" policy. Plaintiffs contend that all claims in this litigation arise
10  from "Pier 1's common, class-wide policies and procedures, and that liability could accordingly
11  be determined on a class-wide basis, without dependence on individual assessments of liability."
12  (Doc. No. 42 at 28.) Class actions in which a defendant's uniform policies are challenged
13  generally satisfy the predominance requirement of Rule 23(b)(3). *See Palacios v. Penny Newman*
14  *Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *5–6 (E.D. Cal. July 6, 2015); *see*
15  *also Clesceri v. Beach City Investigations and Protective Servs., Inc.*, No. CV-10-3873-JST
16  (RZx), 2011 WL 320998, at *7 (C.D. Cal. Jan. 27, 2011). Here, all claims arise from Pier 1's
17  common, class-wide policies and procedures such that liability can be determined on a class-wide
18  basis without dependence on individual assessments of liability. The court therefore concludes
19  that the predominance requirement has been satisfied in this case.

20              b.      Superiority

21  Rule 23(b)(3) also requires a court to find "a class action is superior to other available
22  methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In resolving the
23  Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing
24  separate actions individually, any litigation already in progress involving the same controversy,
25  the desirability of concentrating in one forum, and potential difficulties in managing the class
26  action—although the last two considerations are not relevant in the settlement context." *Palacios*,
27  2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001,
28  at *10 (E.D. Cal. June 11, 2012)). A class action here is superior to any other available method

for adjudicating this controversy.  Provisional certification will allow a fair, adequate, and efficient way to resolve class members' claims, which would alternatively have to be resolved as individual claims for small amounts of damages.  (Doc. No. 42 at 29.)  Joinder of the over 9,000 anticipated class members would be virtually impossible, and the amount in controversy (an average recovery of around $375 without accounting for fees) would likely be far too little to warrant bringing each of these similar claims as individual actions.  Finally, class members will be permitted to opt out of the proposed settlement if they wish to pursue an individual suit.  The court therefore concludes that this dispute appears ideally suited for class-wide resolution.

C.     **Proposed Class Notice and Administration**

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and easily understood language:  (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may appear through an attorney if desired; (5) that the court will exclude members who seek exclusion (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class.  Fed. R. Civ. P. 23(c)(2)(B).  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Plaintiffs provided an updated proposed notice form following the hearing that describes the terms of the settlement, informs the class of the proposed attorneys' fee award to be sought, provides information concerning the time, place, and date of the final approval hearing, and informs absent class members that they may enter an appearance through counsel. (Doc. No. 48-2 at 8). It also notifies absent class members about how they may object to or opt out of the proposed settlement, and provides for mail delivery.  (Doc. No. 42 at 17.)

Plaintiffs have also proposed the following implementation schedule. (Doc. No. 48-2.)

| EVENT | TIME |
| --- | --- |
| Defendant to provide the Settlement Administrator the most recent names, last known residence addresses and telephone numbers, social security numbers for all Class Members, as well as any relevant information regarding their dates of employment in Covered Positions. | Within 21 calendar days following the Date of Preliminary Approval |
| Settlement Administrator to complete any skip trace or other address searched for all Class Members, including updating any contact information.<br><br>Mailing by first class mail of Notice Packets. | Within 14 calendar days after receiving the Class Member List and Contact Information |
| **Deadline for:**<br>Class members to opt-out of Settlement<br><br>Class members to object to the Settlement<br><br>Class members to file a notice of intention to appear at the Final Approval Hearing. | 45 calendar days after Notice Packets are mailed. |
| Hearing on Motion for Final Approval | April 17, 2018<br><br>At least 28 calendar days following the filing of the Motion for Final Approval |

The court finds that the notice and the manner of notice proposed by plaintiffs meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and 29 U.S.C. § 216(b), and that the proposed mail delivery is also appropriate here.

## CONCLUSION

For all the reasons stated above, plaintiffs' motion for preliminary approval of class action settlement (Doc. No. 42) is granted, and:

1. Preliminary class certification under Rule 23 is approved;
2. Plaintiffs' counsel is appointed as class counsel;

3. The named plaintiffs are appointed as class representatives;

4. The proposed notice and claim form are found to conform with Rule 23 and 29 U.S.C. § 216(b) and are approved;

5. The proposed settlement detailed herein is approved on a preliminary basis as fair and adequate;

6. The hearing for final approval of the proposed settlement is set for April 17, 2018 at 9:30 a.m. before the undersigned in Courtroom 5, with the motion for final approval of class action settlement to be filed twenty-eight (28) days in advance of the final approval hearing, in accordance with Local Rule 230; and

7. Plaintiffs' proposed settlement implementation schedule is adopted.

IT IS SO ORDERED.

Dated: **December 11, 2017**

UNITED STATES DISTRICT JUDGE