1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LAUREN MATHEIN and CHRISTINE        No.  1:16-cv-00087-DAD-SAB
     SABAS, individually and on behalf of all
12   others similarly situated,

13                Plaintiffs,              ORDER GRANTING FINAL APPROVAL OF
                                           CLASS ACTION SETTLEMENT AND
14          v.                             AWARDING ATTORNEYS' FEES, COSTS,
                                           AND ENHANCEMENT AWARDS
15   PIER 1 IMPORTS (U.S.), INC.,
                                           (Doc. No. 52, 53)
16                Defendant.

17

18          This matter is before the court on plaintiffs' unopposed motion for attorneys' fees, costs,

19   and enhancement awards and final approval of a class action settlement.  (Doc. Nos. 52, 53.)

20   Oral argument was heard on April 17, 2017.  Attorneys Stanley D. Saltzman and William A.

21   Baird appeared at the hearing on behalf of plaintiffs Lauren Mathein and Christine Sabas

22   ("plaintiffs").  Attorney Gregory Knopp appeared on behalf of defendant Pier 1 Imports (U.S.),

23   Inc.  For the reasons set forth below, the court will grant both motions.

24                            **FACTUAL BACKGROUND**

25          On January 20, 2016, plaintiff Mathein filed the original class action complaint against

26   defendant Pier 1 Imports (U.S.) and Pier 1 Imports, Inc. ("defendants").  (Doc. No. 1).  This

27   action now proceeds on plaintiffs Mathein and Sabas' First Amended Complaint ("FAC"), filed

28   on September 8, 2016.  (Doc. No. 21.)  The primary issue in this case revolves around whether

                                          1

defendant's "Flex Shift" policy—shifts in which associates were scheduled to work, required to report for work, but not guaranteed the opportunity to do so— violated various provisions of the applicable California wage order.  (Doc. No. 42 at 10.)  As part of the "Flex Shift" policy, associates would report to work, either by phone or in person, before learning if they would actually be able to work the flex shift and earn wages.  (*Id*.)  Plaintiffs alleged the following causes of action:  (i) failure to pay reporting time pay; (ii) failure to pay minimum wage; (iii) failure to maintain required business records; (iv) failure to furnish proper wage statement stubs; (v) failure to pay all wages earned at termination; (vi) failure to reimburse business expenses; (vii) failure to pay split shift premiums; (viii) violations of California Business and Professions Code § 17200; and (ix) violations of the California Private Attorneys General Act ("PAGA").  (Doc. No. 21.)

After plaintiffs filed suit, the parties engaged in "extensive written discovery consisting of sets of interrogatories, requests for admission, and requests for production."  (Doc. No. 42 at 11.)  Further, plaintiff Mathein, plaintiff Sabas, and defendant's Person Most Qualified ("PMQ") were deposed over the course of 2016 and 2017.  (*Id*. at 12.)  On February 17, 2017, defendants filed a motion for summary judgment (Doc. No. 27), which plaintiffs opposed (Doc. No. 30).  Defendants' motion for summary judgment came before the court for a hearing on March 21, 2017.  (Doc. No. 33.)  On April 20, 2017, the court agreed to defer ruling on the motion for summary judgment and suspended all deadlines established by the scheduling order in this action pending the parties' participation in private mediation.  (Doc. No. 36.)  On May 17, 2017, the parties filed a stipulation informing the court of a scheduled mediation with David Rotman, Esq. on August 9, 2017.  (Doc. No. 37.)  On August 15, 2018, the parties informed the court that they had reached a settlement.  (Doc. No. 38.)  On September 20, 2017, the parties submitted a stipulation to dismiss Pier 1 Imports, Inc. from this action with prejudice (Doc. No. 43), which the court granted on September 21, 2017, resulting in the action then proceeding only against defendant Pier 1 Imports (U.S.) Inc.  (Doc. No. 44.)  (*Id*.)

The proposed class for this settlement is defined as "all current and former non-managerial associates who are/were working in Defendant's stores in California from January 20,

2

2012 up through March 26, 2016." (Doc. No. 53 at 7.)  There is also a subclass of retail sales associates whose employment terminated during that time period.  (*Id.*)

Under the settlement agreement, defendant will pay a maximum settlement amount ("MSA") of $3,500,000.  (Doc. No. 53 at 8.)  The settlement agreement proposes that the following deductions be made from the MSA:  (i) administration costs not to exceed $70,000 (*see* Doc. No. 50); (ii) attorneys' fees in the amount of one-third of the MSA ($1,166,666) paid to class counsel, plus reimbursement of reasonable and actual expenses, not to exceed $31,500; (iii) enhancement payment of $12,500 to each class representative in addition to their distribution amount as a class member; (iv) employers' payroll taxes; (v) $15,000 allocated to settle the portion of the case brought under the PAGA, with 75% of the PAGA payment ($11,250) paid to the California Labor & Workforce Development Agency, and 25% of the PAGA payment ($3,750) included in the class fund.  (Doc. No. 53 at 8.)  The remaining funds make up the Net Settlement Amount ("NSA"), which is estimated to be $2,203,200.  (*Id.* at 8–9.)  The NSA will be distributed to settlement class members on a proportional basis based on the number of weeks that each class member worked.  (*Id.* at 9.)

On September 15, 2017, plaintiffs filed an unopposed motion for preliminary approval of the class action settlement.  (Doc. No. 42.)  At the court's request, plaintiffs filed supplementary briefing in support of the motion on October 24, 2017.  (Doc. No. 48.)  Plaintiffs sought an order: (i) preliminarily approving the settlement agreement; (ii) conditionally certifying the case for settlement purposes; (iii) directing that the notice packet be mailed to class members; and (iv) scheduling a hearing to determine final approval of the settlement agreement.  (*Id.* at 30.)  On December 12, 2017, the court granted plaintiffs' motion for preliminary approval of the class action settlement and for conditional certification for settlement purposes.  (Doc. No. 49.)  On February 16, 2018, plaintiffs' counsel filed a motion for attorneys' fees, costs, and enhancement awards in conjunction with final approval of class action settlement.  (Doc. No. 52.)  On March 20, 2018, plaintiffs' counsel filed a motion for final approval of the class action settlement.  (Doc. No. 53.)

/////

3

**LEGAL STANDARD**

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, it has been recognized when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

When parties seek class certification only for purposes of settlement, Rule 23 "demand[s] undiluted, even heightened, attention" to the certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The district court must examine the propriety of certification under Rule 23 both at a preliminary stage and at the final fairness hearing. *See, e.g., Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014); *West v. Circle K Stores, Inc.*, No. 04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

Review of a proposed class action settlement ordinarily involves two hearings. *See* MANUAL FOR COMPLEX LITIGATION (4TH) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. If the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

4

**FINAL CERTIFICATION OF CLASS ACTION**

2          The court has already evaluated the standards for class certification in its prior order

3   granting preliminary approval of the class action settlement.  (Doc. No. 49 at 12–18.)  Nothing

4   has been subsequently raised to the court that might affect its prior analysis of whether class

5   certification is appropriate here, and the court has no cause to revisit that analysis.  The court

6   finds final certification of the class as described by the parties is appropriate and that class as

7   described is:  all current and former non-managerial associates who are/were working for

8   defendant in a store in California from January 20, 2012 up through March 26, 2016.  (Doc. No.

9   53 at 3.)

10          In the order granting preliminary approval of the class action settlement, plaintiffs'

11  counsel was appointed as class counsel, and the named plaintiffs, Lauren Mathein and Christine

12  Sabas, were appointed as class representatives.  (Doc. No. 49 at 19–20.)  CPT Group is the

13  settlement administrator in this matter.  (Doc. No. 53-1.)

14                  **FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

15          Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P.

16  23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed,

17  or compromised only with the court's approval.").  This requires that:  (i) notice be sent to all

18  class members; (ii) the court hold a hearing and make a finding that the settlement is fair,

19  reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the

20  settlement agreement; and (iv) class members be given an opportunity to object.  Fed. R. Civ. P.

21  23(e)(1)–(5).  The settlement agreement was previously filed on the court docket (Doc. No. 42-2),

22  and class members have been given an opportunity to object.  The court now turns to the

23  adequacy of notice and its review of the settlement following the final fairness hearing.

24  **A.      Notice**

25          "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

26  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  "Notice is satisfactory if it

27  'generally describes the terms of the settlement in sufficient detail to alert those with adverse

28  viewpoints to investigate and to come forward and be heard.'"  *Churchill Vill., L.L.C. v. Gen.*

*Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery."  *Hanlon*, 150 F.3d at 1025.  It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

The court previously reviewed the notice of class certification at the preliminary approval stage and found it to be satisfactory.  (Doc. No. 49 at 18.)  Following the grant of preliminary approval, the class administrator sent class settlement notices to the entire class of 9,964 class members.  (Doc. No. 53 at 5.)  The settlement administrator conducted a National Change of Address search in order to update the list of addresses for all class members.  (*Id.*)  Out of a class of 9,964 class members, only approximately 150 were returned due to invalid addresses.  (*Id.*)  The settlement administrator was able to trace and locate updated addresses for 141 of the notice addresses, which were then mailed again.  (*Id.*)  Ultimately, forty-eight notices, or approximately 0.5% of notices sent to the class, were deemed undeliverable.  For those individuals, the settlement administrator was not able to obtain a valid address through either the United States Post Office or through skip tracing , which is a process in which the settlement administrator used "hundreds of different databases supplied by credit-reporting agencies, public records, and a variety of other national databases" to search for a correct forwarding address.  (Doc. No. 53-1 at 3.)

As of the final fairness hearing, no class member has objected to the settlement, and the time for objections has now passed.  (Doc. No. 53-1 at 4.)  Moreover, no objections were heard at the final fairness hearing held before the court.  As indicated by plaintiffs' counsel at the hearing, only three class members have opted out of the class:  Linda Ann Johnson, Elizabeth Abeyta, and

6

Mithu Sarkar. The settlement administrator advised the court that currently, there are a total of 9,961 participating class members, representing an overall participation rate of 99.97%. (*Id.*)

Given the above, the court concludes adequate notice was provided to the vast majority of the class here. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (court need not ensure class members all receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The court accepts the reports of the settlement administrator and finds sufficient notice has been provided so as to satisfy Federal Rule of Civil Procedure 23(e)(1).

**B.      Final Fairness Hearing**

On April 17, 2018, the court held a final fairness hearing, at which class counsel and defense counsel appeared. As noted, no class members, objectors, or counsel representing the same appeared at the hearing. The court now determines that the settlement is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and not each need be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7. While the Ninth Circuit has observed that "strong judicial policy . . . . favors settlements," *id.* at 576 (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)), where the parties reached a settlement agreement prior to class certification, the court has an independent duty on behalf of absent class members to be vigilant for any sign of collusion among the negotiating parties. *See*

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process concerns for absent class members," because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee") (internal quotations and citations omitted).

In particular, where a class action settlement agreement was reached prior to a class being certified by the court, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *In re Bluetooth*, 654 F.3d at 946–47. District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. These more subtle signs include: (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotations omitted). The Ninth Circuit has also recognized that a version of a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to a certain amount. *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012); *In re Bluetooth*, 654 F.3d at 947; *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

While this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard and "must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir.

2012)).  Thus, while the court should examine any relevant *Churchill* factors, the failure to review a pre-class certification settlement for those subtle signs of collusion identified above may constitute error.  *Id.* at 1224–25.

### 1.  Strength of Plaintiffs' Case

When assessing the strength of plaintiffs' case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989).  The court cannot reach such a conclusion because evidence has not been fully presented. *Id.*  Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

Here, plaintiffs believe their case against defendant was strong but recognize that recovery on the merits was far from certain.  Plaintiffs contended that defendant should be liable for all claims alleged in the complaint.  (Doc. No. 53 at 12.)  However, defendant maintained that the class members were not entitled to reporting time pay for cancelled flex shifts, that call-in time for flex shifts was not compensable, and that class members did not incur reimbursable expenses. (*Id.*)  In addition, plaintiffs recognize that some courts have dismissed similar claims involving whether plaintiffs were entitled to reporting time pay.  (*Id.*)  Plaintiffs also acknowledge that they faced significant hurdles in overcoming defendant's motion for summary judgment and obtaining, and then maintaining, class status.  (*Id.*)  Therefore, while plaintiffs potentially had meritorious claims, it is far from certain that they would have prevailed on those claims, given the unsettled nature of the law applicable to their claims.

### 2.  Risk, Expense, Complexity, and Likely Duration of Further Litigation, and Risk of Maintaining Class Action Status Through Trial

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results."

*Johnson v. Shaffer*, No. 2:12-cv-1059 KJM AC P, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 09–00704, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

Here, plaintiffs indicate that litigating this case would likely have been expensive and would have delayed payment of any compensation for possibly years to come. Plaintiffs cite two cases involving similar claims to illustrate this point. In *Casas v. Victoria's Secret Stores, LLC*, 2:14-cv-06412-GW (VBKx) (C.D. Cal. Feb. 5, 2015), the court dismissed claims similar to those presented here involving a failure to pay plaintiffs minimum wages for the "time employees spent calling a supervisor or manager to determine whether or not they will be required to report for a particular 'call in' shift." *Id.* at 3. Following full briefing and oral argument on appeal but prior to the rendering of the Ninth Circuit's decision, the parties reached a settlement. *Casas*, 2:14-cv-06412-GW (VBKx) (C.D. Cal. Nov. 22, 2016). Similarly, in *Bernal v. Zumiez, Inc.*, 2:16-cv-01802-SB (E.D. Cal. Aug. 16, 2017), the court denied defendant's motion to dismiss multiple claims deriving from the plaintiff's reporting time pay claim and the case is now pending appeal before the Ninth Circuit. By contrast, the proposed settlement in this action provides significant and certain compensation that is available now, without the additional time and risk of a decision that would likely be subject to the lengthy appeal process.

### 3. Settlement Amount

Generally, in evaluating the fairness of a settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982).

Here, the total proposed settlement is for $3.5 million, which will be paid proportionally to all class members based on the number of weeks each class member worked. (Doc. No. 53 at 9.) Plaintiffs state that the overall average payment for all class members will be approximately

10

$351 (i.e. $3.5 million divided by 9,964 class members).  (*Id.*)  After accounting for deducted fees, the overall average payment for all class members will be approximately $236.

Class counsel urges the court to also consider the average payments based on the number of "full time equivalent" ("FTE") employees, which would estimate how many class member employees were working for defendants at any given time during the class period.  (Doc. No. 53 at 9–10.)  Plaintiffs report that if there had been no turnover, the data reveals that there would be approximately one thousand workers holding the class positions at any given time during the class period.  (*Id.* at 9.)  Assuming no turnover, a class of approximately one thousand workers would receive an FTE settlement award calculated to be approximately $3,500.  (*Id.*)  This would equate to almost eighteen weeks of pay for an FTE individual who was employed with the defendant for the complete period of time covered by the class, which is a significant recovery given that class members often worked approximately twenty hours per week at an average pay rate of less than $10 per hour.  (*See id.* at 9.)

In their supplemental brief in support of the motion for final approval, plaintiffs provided estimates of the value of each claim.  (Doc. No. 48 at 3.)  In this regard, if they were to prevail at trial, plaintiffs value the failure to pay reporting time claim, when an employee reported for a flex shift that she was not permitted to work, at $6.2 million for the class.  (*Id.*)  Plaintiffs estimate a global damages presentation of approximately $12 million, assuming their complete victory on all claims.  (*Id.* at 6.)  As previously discussed, plaintiffs acknowledge varying levels of certainty that they would prevail for each of their different claims.  (*Id.*)  Given the lack of clear precedent and the novelty of plaintiffs' arguments in support of their claims, the court finds that the proposed settlement award, which recovers approximately 28% of the global damages estimate, is fair and adequate.

    4.    <u>Extent of Discovery Completed and the Stage of the Proceedings</u>

"In the context of class action settlement, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Approval of a class

action settlement thus "is proper as long as discovery allowed the parties to form a clear view of the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The court has detailed the extensive discovery completed by the parties in this case in its prior order. (*See* Doc. No. 49 at 2.) After plaintiffs filed suit, the parties engaged in "extensive written discovery consisting of sets of interrogatories, requests for admission, and requests for production." (Doc. No. 42 at 11.) Plaintiffs Mathein and Sabas, as well as defendant's PMQ, were deposed in 2016 and 2017. (*Id.* at 12.) The discovery efforts engaged in by counsel on both sides bolsters this court's conclusion that this settlement is fairly reached.

### 5. Experience and Views of Counsel

As discussed in the order regarding the motion for preliminary approval of the class action settlement, plaintiffs' counsel both declare that they strongly support final approval of this settlement. (*See* Doc. Nos. 42-1, 42-3.) Attorney Baird describes the uncertainty and risks of further litigation, especially considering the unsettled nature of the relevant law. (Doc. No. 42-1 at 6.) Further, attorney Saltzman submitted a declaration stating that he is well-versed in class action litigation and fully supports the settlement in this case. (Doc. No. 42-3.) These opinions weigh in favor of finding the settlement to be reasonable.

### 6. Presence of a Governmental Participant

Because there are no separate governmental participants involved in the action, this factor is neutral in the court's analysis of the settlement agreement. *See Shaffer*, 2016 WL 3027744, at *5.

### 7. Reaction of Class to the Proposed Settlement

The absence of objections to a proposed class action settlement supports the conclusion that the settlement is fair, reasonable, and adequate. *See National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (and cases cited therein); *Barcia v. Contain-A-Way, Inc.*, 3:07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

8.    Subtle Signs of Collusion

The court now turns to a review of whether any of the "more subtle signs" of collusion noted by the Ninth Circuit are present here. *See In re Bluetooth*, 654 F.3d at 947. The award of attorneys' fees sought here—one-third of the settlement fund—is on the high end of amounts typically awarded in the Ninth Circuit. *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704, 2011 WL 5511767 AWI JLT, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). That said, the proposed attorneys' fees award is not disproportionate to the significant monetary distribution the class will receive. Additionally, there are no "clear sailing" provisions here, and settlement of the claims is expressly not conditioned on the approval of fees, costs, and expenses to class counsel under the settlement agreement. (Doc. No. 52 at 10.) Class counsel's attorneys' fees and costs are to be paid from the common fund, and will not be paid separately by defense counsel. (*Id.*) Finally, there is no reversionary clause in the agreement, and any funds remaining after the deadline for class members to cash checks will be tendered by the settlement administrator via proper escheatment procedures to the State of California, in the name of and for the benefit of participating class members. (*Id.* at 9.)

The court is satisfied that none of the subtle signs of collusion are present here and, therefore, finds that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e).

## ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

**A.    Attorneys' Fees**

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from

the common fund.  *Id.*; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

In an action such as this, federal courts apply state law both to determining the right to fees and the method of calculating them.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. California Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The California Supreme Court recently held that the percentage-of-fund method of calculating attorneys' fees survives in California courts.  *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (2016).  A court "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."  *Id.* at 503.  The California Supreme Court suggested considerations of the risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skill shown by counsel, and a lodestar cross-check were all appropriate means of discerning an appropriate percentage award in a common fund case.  *Id.* at 504.  Notably, while the California Supreme Court recognized the Ninth Circuit's 25 percent benchmark for percentage awards in common fund cases, it did not adopt such a benchmark.  *Id.* at 495, 503–06.  Similarly, in common fund percentage award cases, the Ninth Circuit has provided a non-exhaustive list of factors to use in assessing the reasonableness of fee awards including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Vizcaino*, 290 F.3d at 1047–50).  The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar."  *Bluetooth*, 654 F.3d at 942.

Here, class counsel presents numerous reasons for awarding fees in the amount of one-third of the settlement fund:  (i) a fee award of one-third of the total recovery is consistent with awards ordered by district courts within this circuit and affirmed by the California Supreme

Court; (ii) class counsel achieved an exceptional result, both in terms of the magnitude of the relief and by eliminating a policy adversely affecting employees; (iii) class counsel was only able to recover on a contingency basis for this action; (iv) the skill of counsel and the work performed support the fee request; and (v) the lodestar cross check attests to the reasonableness of the negotiated fee request. (Doc. No. 52 at 19–30.) The court addresses each of counsel's arguments that it finds pertinent below.

The results achieved in this case support the requested award of one-third of the total recovery. Here, the total proposed settlement is for $3.5 million, which will be paid proportionally to all class members based on the number of weeks each class member worked. (Doc. No. 42 at 14.) After accounting for deducted fees, the overall average payment for all class members will be approximately $236, which is a modest recovery. However, class counsel urges consideration of average payments based on the number of FTE employees, estimating that there would be approximately one thousand workers holding the class positions at any given time during the class period, and that they would each receive approximately $3,500 in recovery. (*See* Doc. No. 52 at 21–22.)

Additionally, the court notes that the impact of plaintiffs' lawsuit supports the requested award of attorneys' fees. Defendant has discontinued the flex shift call-in policy challenged in the lawsuit, and numerous retailers across the country[1] have followed suit in ending similar practices involving on-call scheduling. (Doc. No. 52 at 22-23.) "While . . . class action fee awards that are unjustifiably large create problems for the bench and bar, awards that are too small can also be problematic, as they chill the private enforcement essential to the vindication of many legal rights and obstruct the representative actions that often relieve the courts of the need to separately adjudicate numerous claims." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 52–53 (citing *Serrano v. Priest*, 20 Cal. 3d 25, 45 (1977)). Consideration of the results obtained by plaintiffs' counsel here weighs in favor of approving the requested award of one-third

---

[1] In June 2015, Victoria's Secret announced it was ending its on-call scheduling. (Doc. No. 52 at 23.) In March 2016, the retailers Pier 1, Abercrombie & Fitch Co., The Gap Inc., J. Crew Group Inc., Urban Outfitters Inc. and Bath & Body Works LLC followed suit. (*Id.*)

of the total recovery amount.

Class counsel here also faced a substantial risk of non-payment, which favors approval of the requested award. Having accepted the matter on a purely contingent basis, class counsel would not have been compensated absent a recovery for the class. (Doc. No. 52 at 24–25.) Further, class counsel expended significant effort and resources in litigating this case, devoting 1,173 hours and $28,275 in out-of-pocket costs before obtaining recovery for the class. (*Id.* at 24.) "[A]ttorneys whose compensation depends on their winning the case[ ] must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051 (quoting *In re Wash. Pub. Power Supply*, 19 F.3d at 1300–01). This, too, supports an above-benchmark fee award.

The absence of any objections to the settlement also supports the award of the attorneys' fees sought in this case. The class notices specifically advised class members that class counsel would seek one-third of the fund for attorneys' fees, as well as reimbursement for any costs for litigation. (Doc. No. 42-2 at 29–30.) No objections to the proposed settlement were received, and only three class members opted out of the settlement. (Doc. No. 53 at 5.) Therefore, this attorneys' fee arrangement clearly appears to have the support of the class.

Finally, a lodestar cross-check bolsters the attorneys' fees request further. Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, courts apply a lodestar multiplier. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting NEWBERG).

/////

This court has previously accepted as reasonable for lodestar purposes hourly rates between $370 and $495 for associates, and $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017). Some judges in the Fresno division of the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 838–40 (E.D. Cal. 2016) (concluding that Fresno division rates are $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years' experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners). Here, the court generally adopts the hourly rates provided by class counsel for lodestar cross-check purposes as appropriate but makes some necessary downward adjustments.[2]

---

[2] The hourly rates provided by class counsel range between $195 for paralegals and $750 for senior counsel. The court will adjust these rates downward. The prevailing rate for paralegals in the Eastern District of California is on the order of $95 to $115 per hour, and the court applies a rate of $115 per hour here. *See Moore v. Millennium Acquisitions, LLC*, No 1:14-cv-01402-DAD-SAB, 2017 WL 1079753, at *2–3 (E.D. Cal. Mar. 21, 2017); *Trujillo v. La Valley Foods*,

17

Additionally, counsels' declarations are sufficient to establish the number of attorney hours worked on this matter. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (quoting *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)). Here, counsel represents that more than 1,173 hours have been spent by all attorneys and paralegals on this case. (Doc. No. 52-1 at 13.) Combining the hours counsel represented they spent on the case with the applicable hourly rate, the lodestar base figure here is $710,114.00, rather than the $723,492.50 estimated by counsel. (*See* Doc. No. 52-1 at 14.)

| ATTORNEY/PARALEGAL | RATE | HOURS | TOTAL |
|---|---|---|---|
| Stanley D. Saltzman | $750 | 170.9 | $128,175.00 |
| Alan S. Lazar | $750 | 47.2 | $35,400.00 |
| William A. Baird | $675 | 309.9 | $209,182.50 |
| David C. Leimbach | $575 | 565.3 | $325,047.50 |
| Cody R. Kennedy | $475 | 8.7 | $4,132.50 |
| Susan Joseph | $115 | 71.1 | $8,176.50 |
| <u>Total</u> | | <u>1173.1</u> | <u>$710,114.00</u> |

Ultimately, class counsel requests an award of one-third of the $3.5 million settlement fund, or $1,166,666.66. Thus, the lodestar multiplier would be approximately 1.64, which is within the range of acceptable multipliers that have been approved by courts in this circuit. *See*

---

*Inc.*, No. 1:16-cv-01402-AWI-BAM, 2017 WL 2992453, at *5 (E.D. Cal. July 14, 2017). Additionally, class counsel Saltzman's rate is adjusted downward to $695 per hour, which is the upper limit typically recognized for senior counsel and partners in this division of this court. While rates provided for the other attorneys who worked on this case appear to be somewhat higher than would normally be awarded in the Fresno division of the Eastern District of California, the undersigned accepts them as given for purposes of this "rough calculation." *Bond*, 2011 WL 2648879, at *12.

*Vizcaino*, 290 F.3d at 1051. The court finds a 1.64 lodestar multiplier to be reasonable here for purposes of a cross-check.

For the reasons set forth above, the court concludes that the request for one-third of the settlement fund to be awarded as attorneys' fees is reasonable in this case.

**B.      Expenses of Class Counsel**

Additionally, class counsel seeks to recover the costs expended on this litigation. Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id.*

Attorney Saltzman reports that his firm incurred costs of $28,275, which includes costs resulting from filing fees, deposition expenses, travel expenses related to the out of town depositions of one plaintiff and defendant's witness, mediation expenses, copying and management of documents, postage, fax transmission expenses, and other incidental expenses directly related to this action. The court finds these expenses to be reasonable and will approve them.

**C.      Incentive Payments for Class Representatives**

Plaintiffs each seek an incentive payment of $12,500 for their service as a class representative in this action. While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, .

19

. . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Such awards must be "scrutinize[d] carefully . . . so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Thus, incentive awards that are explicitly conditioned on the representatives' support for the settlement, as well as those that are significantly higher than the average amount awarded in settlement, should typically not be approved. *Id.* at 1164–65. The core inquiry is whether an incentive award creates a conflict of interest, and whether plaintiffs "maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *In re Online DVD-Rental*, 779 F.3d at 943.

Here, plaintiffs each submitted declarations detailing their involvement with this case. Plaintiffs state that the requested incentive award is appropriate in light of their efforts expended during the course of the litigation. (Doc. Nos. 52-4; 52-5.) Plaintiff Mathein states that she has been in regular and close contact with class counsel for the last two and a half years to work on issues spanning the life cycle of the case, including explaining the facts, framing the issues, searching for documents, assisting in preparing discovery requests, preparing and appearing for a deposition, and participating in settlement discussions. (Doc. No. 52-4 at 2-4.) Plaintiff Sabas reports similar involvement in all stages of the case. (Doc. No. 52-5 at 4.) Both plaintiffs estimate that they have each spent at least 50 hours on the duties and issues discussed above. (Doc. Nos. 52-4 at 4; 52-5 at 4.) The incentive award sought is not conditioned on the representatives' support for the settlement.

As discussed in the order granting preliminary approval, the incentive award provided in the settlement agreement is significantly higher than the average recovery amount of individual class members. The average payment for all class members is $351, but class counsel urges the court to calculate the average payment based on the number of FTE employees, resulting in an average payment of $3,500 for each FTE position, or approximately $2,200, after subtracting all proposed fees. (Doc. No. 53 at 9.)

/////

However, because of the nature of this litigation, the court also considers that plaintiffs faced significant associational and reputational risks in bringing this suit if it had not been successful. Further, the combined incentive payments make up a small portion of the overall settlement funds. Plaintiffs are also being required to provide a full and complete general release, which is not required of the class members. (Doc. No. 52 at 31.) Ultimately, the incentive payments proposed here are not far outside the amounts previously approved by courts under similar circumstances. *See, e.g., Taylor v. FedEx Freight, Inc*., No. 1:13-cv-01137-DAD-BAM, 2016 WL 6038949, at *8 (E.D. Cal. Oct. 13, 2016) (approving a $10,000 incentive award); *Ontiveros v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (approving $15,000 incentive payments). The court finds that given plaintiffs' significant contributions to the case and the risks they faced in bringing this suit, incentive awards of $12,500 for each plaintiff are appropriate.

## CONCLUSION

For the reasons stated above:

1. Plaintiffs' motion for final approval of the settlement (Doc. No. 53) is granted, the settlement class is certified, and the court approves the settlement as fair, reasonable, and adequate;

2. Plaintiffs' motion for attorneys' fees, costs, and incentive awards (Doc. No. 52) is granted, and the court awards the following sums:

   a. Class counsel shall receive $1,166,666.66 in attorneys' fees, and $28,275 in expenses;

   b. Named plaintiffs Lauren Mathein and Christine Sabas shall each receive $12,500 as incentive payments; and

   c. The parties shall direct payment of 75 percent of the settlement allocated to the PAGA payment, or $11,250, to the California Labor and Workforce Development Agency, as required by California law, and the remainder of the PAGA payment, or $3,750, shall be included in the class fund;

/////

/////

3. All parties are directed to abide by the settlement agreement (Doc. No. 42-2), including any deadlines or procedures for distribution included therein, and take all necessary steps to complete and administer the settlement in accordance therewith; and

4. The court retains jurisdiction to consider any further applications arising out of or in connection with the settlement.

IT IS SO ORDERED.

Dated: __April 26, 2018__

_____
UNITED STATES DISTRICT JUDGE